**Fay William BONNER, Appellant,**

**v.**

**Dr. George J. BETO, Director, Texas Department of Corrections, Appellee.**

**No. 23803.**

United States Court of Appeals
Fifth Circuit.

Feb. 15, 1967.

Rehearing Denied March 17, 1967.

Orville A. Harlan, Houston, Tex., Fay William Bonner, pro se, for appellant.

Lonny F. Zwiener, Asst. Atty. Gen., Waggoner Carr, Atty. Gen., of Texas, Hawthorne Phillips, First Asst. Atty. Gen., T. B. Wright, Executive Asst. Atty. Gen., Howard M. Fender, Asst. Atty. Gen., for appellee.

Before TUTTLE, Chief Judge, and AINSWORTH and DYER, Circuit Judges.

DYER, Circuit Judge:

This is an appeal *in forma pauperis* from the District Court's denial of appellant's petition for a Writ of Habeas Corpus.

Bonner and his wife were indicted separately in the state courts of Texas for the same burglary. Immediately prior to appellant's trial his wife pleaded guilty and was given probation. When appellant attempted to call her as a witness at his trial, the state trial judge refused to allow her to testify because of Article 711 of the Texas Code of Criminal Procedure, which declared co-principals in-competent to testify for a principal.[1] No witnesses appeared for the accused. Bonner was convicted of burglary enhanced by prior convictions and given a life sentence as an habitual offender. The Texas Court of Criminal Appeals upheld the application of the Texas statute in Bonner's trial without discussing federal constitutional issues. Bonner v. State, 375 S.W.2d 723, (Tex.Crim.App., 1964).[2] Having exhausted his state remedies Bonner sought but was denied the Great Writ in the United States District Court.

The issue we are called upon to decide is whether it is a denial of Fourteenth Amendment due process for a state trial judge to refuse to allow a principal to call a co-principal, indicted in a separate indictment for the same offense, as a witness on his behalf, because a state statute declares a co-principal incompetent to testify on behalf of a principal.

Bonner testified that he was returning the goods his wife had stolen. It, therefore, became imperative to his defense that his testimony be corroborated, if possible. His wife was the only one who

1. Persons charged as principals, accomplices or accessories, whether in the same or different indictments, cannot be introduced as witnesses for one another, but they may claim a severance; and, if any one or more be acquitted, or the prosecution against them be dismissed, they may testify in behalf of the others. Article 711, Vernon's Ann.Texas Code of Criminal Procedure. (1925)
We observe that Texas revised its Code of Criminal Procedure in 1965, omitting Article 711. Article 38.08 of the Revised Code, however, notes that Article 82 of Vernon's Ann.Texas Penal Code was not repealed by the 1965 revision and still prohibits principals, accomplices or accessories from testifying for each other in language similar to old Article 711 Vernon's Ann.C.C.P. (1925).

2. There is a long line of Texas cases applying Article 711 of the Vernon's Ann. Texas Code of Criminal Procedure and Article 82 of the Vernon's Ann.Texas Penal Code.
Not, however, until the recent cases of Washington v. State (Tex.Crim.App. 1966) 400 S.W.2d 756, and Brown v. State, (Tex.Crim.App.1966) 401 S.W.2d 251 has the constitutionality of Articles 711 Vernon's Ann.C.C.P. and 82 Vernon's Ann.P.C. been attacked. The *Washington* court in refusing to hold the statute unconstitutional said: "The legislature has the power, except as limited by the constitution, to proscribe the competency of witnesses in all cases. * * * These statutes are procedural only, and do not deprive the accused of any constitutional right." 400 S.W.2d at 759. The United States Supreme Court granted certiorari in *Washington*, supra, and transferred the case to the Appellate docket placing it on the summary calendar October 10, 1966, to decide the question:
"Is petitioner's conviction and sentence void because he was denied his rights under the Sixth and Fourteenth Amendments to the Constitution of the United States to have compulsory process in obtaining an available witness in his favor, namely, a Co-Defendant, charged and previously convicted under a separate indictment for the same transaction and which Co-Defendant, according to his Affidavit, could have exonerated Petitioner if such testimony were believed by the jury?" Washington v. State of Texas, 385 U.S. 812, 87 S.Ct. 123, 17 L.Ed.2d 54.

could do so. She was not allowed to testify, however, and there were no other witnesses called on his behalf. The defendant stood alone.

Article 711 is an outgrowth of the common-law's abhorrence of "the idea of any person testifying who had the least interest." State v. Barrows, 76 Me. 401, 409. In his Commentaries, Blackstone stated the settled common-law rule to be that "[a]ll witnesses, of whatever religion or country, that have the use of their reason, are to be received and examined, except such as are *infamous*, or such as are *interested* in the event of the cause." 3 Bl.Comm. 369.

Wigmore reduced the interest disqualification theory to a syllogism based on the fallacious premises that witnesses who would probably speak falsely should be totally excluded as witnesses and that interested persons are specially likely to speak falsely and therefore should be excluded.[3] Thus, indictees and defendants were not competent to testify for themselves or for or against their co-indictees or co-defendants. The courts were divided, however, on whether or not, as here, a person indicted separately for the same crime with which the defendant was

charged was competent to testify on behalf of the defendant.[4]

Beginning early in the 19th Century, attacks were made on the disqualification for interest. The removal of the disqualification of interested non-party witnesses in civil cases fell first. See Lord Denman's Act of 1843, 6 and 7 Vict., c. 85. Next, party witnesses in civil cases were declared competent by the County Courts Act of 1846, 9 and 10 Vict., c. 95 and Lord Brougham's Act of 1851, 14 and 15 Vict. c. 99.[5] Maine was the first jurisdiction to allow an accused in a criminal prosecution to testify for himself. Maine Acts 1859, c. 104. Texas followed suit in 1889.[6] Every state adopted a similar statute except Georgia.[7] The object of these statutes was plainly to remove the disqualification of the accused as a party. 2 Wigmore, supra § 580. It would seem that the disqualification of a co-indictee, a co-defendant or a person indicted separately for the same crime should have been removed also; for they were disqualified solely because they were interested parties, and they obviously had less interest in the outcome than did the accused himself. But in the Texas statute, as in other states,[8] the ac-

---

3. The fallacies were exposed for the first time by Jeremy Bentham in his treatise, Rationale of Judicial Evidence, b. IX, pt. III, c. III (Bowring ed., 1827, Vol. VII, pp. 393 ff.) See 2 Wigmore, Evidence, 3rd ed., § 576.

4. For a list of the cases on each side see 2 Wigmore, Evidence, § 580, n. 4 and 18 Texas L.Rev. 62 n. 2.

5. The American development followed a similar pattern. It is traced in 2 Wigmore, supra, pp. 686–695.

6. Acts 1889, p. 37, now Vernon's Ann. Texas Code Crim.Proc. (1925) Art. 710. Up until this time Texas had generally followed the common law rules of incompetency including the disqualification of the accused. The common law had been in effect in Texas since 1840, when the Congressional Act of January 20, 1840, 2 Gammel's Laws, p. 177, Art. 1 Vernon's Ann.Tex.Civ.Stats., made the common law of England, so far as it was consistent with the constitutional and legislative enactments of Texas, the law in Texas. Although Texas was an independ-

ent republic at that time, the 1840 Act was construed as referring to the English Common Law as declared by the various courts of the United States as it existed in 1840. Southern Pacific Co. v. Porter, 160 Tex. 329, 331 S.W.2d 42, 45 (1960).

7. In Ferguson v. State of Georgia, 365 U.S. 570, 81 S.Ct. 756, 5 L.Ed.2d 783 (1961) the court refused to consider the constitutionality of the Georgia disqualification statute, because the appellant did not raise the point, nor did he proffer any testimony. Mr. Justice Clark in his concurring opinion in which Mr. Justice Frankfurter joined, stated that: "Reaching the basic issue of incompetency, as I feel one must, I do not hesitate to state that in my view § 38–416 [the Georgia disqualification statute] does not meet the requirements of due process and that, as an unsatisfactory remnant of an age gone by, it must fall." 365 U.S. at 602, 81 S.Ct. at 773.

8. The Texas history here parallels that of other states. See 2 Wigmore, supra, at 707.

cused was declared competent to testify "on his own behalf",[9] thus omitting in terms to provide that he be a competent witness on behalf of or against another defendant. Notwithstanding the fact, however, that the historical reasons for the interest disqualification rule had been shown to be unsound and it was discarded, Article 711 and its counterpart[10] survived successive revisions of the Texas Codes.

■ The Fourteenth Amendment leaves Texas free to adopt whatever statute or decision she elects concerning the competency of various classifications of witnesses to testify, whether or not her rule conforms to that applied in the Federal Courts or in other state courts. But as the Supreme Court said in Lisenba v. People of State of California, 314 U.S. 219, 62 S.Ct. 280, 86 L.Ed. 166 (1941), "[T]he adoption of the rule of her choice cannot foreclose inquiry as to whether, in a given case, the application of that rule works a deprivation of the prisoner's life or liberty without due process of law."[11] 314 U.S. at 236, 62 S.Ct. at 290.

■ The district court held that because the testimony of Bonner's wife was self-serving,[12] its prohibition was a reasonable policy and was consistent with the Fourteenth Amendment. We disagree and view the determination of the credibility of a witness' testimony as a function of the jury.

■ We hold that the application of Article 711 of the Vernon's Ann.Texas Code of Criminal Procedure to Bonner worked a deprivation of his liberty without due process of law under the Fourteenth Amendment.

In view of our holding, we do not reach appellant's contention that the Sixth Amendment's right of an accused "to have compulsory process for obtaining Witnesses in his favor" is incorporated in

the Fourteenth Amendment's due process clause.

The judgment of the district court is reversed and the cause is remanded with directions to give to the state of Texas a reasonable time within which to grant a new trial to the appellant, failing which the writ shall be granted.

Reversed and remanded.

---

9. See footnote 6.

10. See footnote 1.

11. The court there was speaking of a state rule on the admissibility of confessions, but the principle is equally apchicable here.

12. That her testimony was going to be self-serving is beyond question. The proffer of her testimony shows she was going to testify that she alone committed the burglary.